D. W. SOPER *et al.* v. WILLIAM H. F. GABE *et al.*

1. SPECIFIC PERFORMANCE — *Tender of Title.* Where, by the terms of a contract for the sale and conveyance of land, the purchase-price is made payable in installments, and the conveyance is to be made upon the payment of the last installment, and where default is made by the purchasers in the payments, and no action is brought by the vendors to enforce the contract until after the maturity of the last installment, the obligations of the parties to the contract are mutual and dependent, and the vendors cannot maintain an action to enforce the contract specifically, or to recover any part of the purchase-money until they make or tender a conveyance of the land.

2. PETITION, *Fatally Defective — Demurrer.* A petition filed by the vendors in an action to enforce such a contract, which contains no averment of a tender of conveyance and alleges no excuse for the failure to make such a tender, is fatally defective, and a demurrer thereto should be sustained.

3. ANSWER — *No Waiver of Essential Averments.* The allegations of the answer of the purchasers and the testimony with respect to their statements and conduct examined, and *held* that they did not constitute a waiver of the essential averments and proof of a tender of conveyance by the vendors.

4. —— *Erroneous Judgment.* A judgment in such action which awards to the vendors the full purchase-price of the land without requiring them to convey the same to the purchasers by a good title is erroneous, and the error is reversible in this court, although no exception was taken to the same in the trial court.

*Error from Mitchell District Court.*

ON May 21, 1887, *William H. F. Gabe* and his wife sold 165 acres of land to *D. W. Soper* and 13 others at the agreed price of $14,000. A cash payment of $2,800 was made, and the balance, which was to bear interest at 8 per cent., was to be paid in installments of $2,800 every three months, making the last payment due upon May 21, 1888. The purchasers were to have possession of the land three months after the sale, together with a share of the crops growing

thereon. Among other things, the written agreement of the parties stipulated that punctual payment of the installments should be made as they became due, and that the purchasers should seasonably pay all taxes and assessments that might thereafter become due upon the premises. It also contained the following provision :

"In case the second party [the purchasers], his legal representatives or assigns, shall pay the several sums of money aforesaid punctually and at the times above limited, and shall strictly and literally perform all and singular the agreements and stipulations aforesaid, after their true tenor and intent, then the first party [the Gabes] will cause to be made and executed unto the said second party, his heirs or assigns, (upon request, at the office of the first party, and the surrender of this contract,) a good and sufficient warranty deed, free and clear of all incumbrances existing against said premises at the date of this contract. And it is hereby agreed and covenanted by the parties hereto that time and punctuality are material and essential ingredients of this contract. And in case the second party shall fail to make payments aforesaid, and each of them, punctually and upon the strict terms and times above limited, and likewise to perform and complete all and each of the agreements and stipulations aforesaid, strictly and literally, without any failure or default, then this contract, so far as it may bind said first party, shall become utterly null and void, and all rights and interests hereby created or then existing in favor of or derived from the second party shall utterly cease and determine, and the right of possession and all equitable and legal interests in the premises hereby contracted shall revert to and revest in the said first party, without any declaration of forfeiture or act of re-entry or any other act by said first party to be performed, and without any right of said second party of reclamation or compensation for moneys paid or services performed, as absolutely, fully and perfectly as if this contract had never been made."

The purchasers failed to make the payments provided for, and on August 6, 1889, the Gabes brought an action against the purchasers for the specific performance of the contract. In their petition they set the contract forth, and allege that $3,000 had been paid, together with interest on the balance up to May 22, 1888, and that the remainder of the purchase-money, with interest from the last date, amounting to $11,000, was due under and by the terms of the contract. It was further alleged that the purchasers had enjoyed the use and peaceable possession of the premises ever since the making of the contract, and that the plaintiffs were ready and willing to perform their part of the agreement, and to convey the premises upon payment of the remainder of the purchase-money. The prayer of the plaintiffs was for a judgment for specific performance, for the amount due under the contract, and an averment alleging willingness to perform their part of the agreement by the execution of a proper conveyance of the premises. The defendants, who were the purchasers, demurred to the petition upon the ground that it did not state facts sufficient to constitute a cause of action, but the demurrer was overruled. Afterward, the defendants answered. The answer contained : First, a general denial ; second, that by reason of the default of the defendants to make the payments agreed upon, the contract had become null and void, and all rights thereunder in favor of either party had ceased and determined ; and, third, that the plaintiffs, prior to the bringing of the action, had availed themselves of the right under the contract to accept a forfeiture arising by reason of the default of the defendants, and had, prior to the commencement of the action, with the consent of the defendants, accepted and taken possession of the land, and retained

all of the money paid on the contract, which, it averred, was equal to the real value of the land. A trial was had with a jury, and when the testimony of the plaintiffs was concluded, the defendants demurred to the evidence, but the demurrer was overruled. The jury returned a verdict for the plaintiffs for $13,072.70. Upon this verdict, an unconditional judgment for the payment of money was rendered against the defendants for the full amount of the unpaid purchase-money, and no provision was made whatever for securing a title to the land to the defendants, nor that the plaintifis should execute a deed to the defendants upon the satisfaction of the judgment, or at any other time. The defendants complain of the rulings made, and bring the case here for review.

*J. D. McFarland*, for plaintiffs in error.

*A. H. Ellis*, *E. S. Ellis*, and *F. T. Burnham*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J. : The first point to which our attention is called is the insufficiency of the petition. It contained no averment that a deed conveying a good title to the land, or that any deed, was ever executed by the Gabes to the purchasers, or that before the commencement of the action or at any other time the Gabes had tendered the purchasers a conveyance of the premises purchased, nor did it contain any excuse for the failure to tender a deed. The obligations of the contract are mutual and dependent, and before one party can enforce performance it must appear that he is not himself in default. The Gabes might have enforced the collection of all the installments preceding

the last one without having tendered a conveyance of the property sold, but as no steps were taken to collect the several installments until after the last one was due, a single cause of action exists for the collection of the purchase-money, and payment cannot be compelled until they have complied or tendered compliance with the obligations resting upon them. In a somewhat similar case it was said that —

"All the parties to the papers must perform at the same time, neither being under any obligation to trust the other. As it appears that Elledge has neither delivered nor tendered a deed, he cannot maintain an action for the purchase-money embraced in the note sued on." (*Iles v. Elledge*, 18 Kas. 296.)

In a later case of the same character and where the agreements of the parties were held to be mutual and dependent, it was said that —

"Neither party can put the other in default, save by a performance or an offer to perform on his part. No action can be maintained on the note, not even to adjudge it a lien, until the plaintiff has offered to convey the premises. . . . At any rate, before either party can justly summon the other into court and impose the expense and annoyance of a suit, he should at least tender performance on his part." (*Morrison v. Terrell*, 27 Kas. 326. See, also, *Close v. Dunn*, 24 Kas. 372; *Sanford v. Bartholomew*, 33 id. 38.)

It is well settled in this state that a vendor cannot enforce a contract like the one in question and collect the purchase-price of the land which he has agreed to convey without alleging and proving that he has performed his own obligation by making and tendering a deed of conveyance. As the delivery or tender of a deed is a prerequisite to compel a performance, allegations of

1. Specific performance; tender of deed.

**2. Defective petition; demurrer.** a tender or offer of performance in the petition were essential; and, as the petition of the plaintiffs below wholly failed in this particular, no right of action was shown, and the court committed error in overruling the demurrer.

The demurrer to the evidence should have been sustained for the same reason. No proof of performance was offered, nor was any excuse for **3. Answer; no waiver of essential averments.** the want of it shown. The allegations of the answer did not supply the essential averment of tender, nor did they constitute a waiver of such averment and proof.

It is contended that the tender of a deed was unnecessary because the proof showed that the defendants below — the purchasers — had repudiated the contract and declined to carry out its provisions before the commencement of the action. One of the defendants testified upon rebuttal that at an interview with the Gabes prior to the beginning of the action he told them that the defendants "had concluded to let the land go back." It does not appear that he had authority to speak for his associates. A single remark of this kind by one of the 14 purchasers is hardly sufficient to show that a tender would have been declined, and is wholly insufficient of itself to constitute a waiver.

The plaintiffs in error contend that the delay of the Gabes in attempting to secure performance, or in applying to the court for relief, amounts to waiver of their rights under the contract, and to an acceptance of the forfeiture. It is true that, where time is made of the essence of the contract, a party to obtain specific performance must have acted without unreasonable delay. In this case, however, the conduct of the parties and the circumstances of the case indicate

that the Gabes had waived the payment of the money upon the day it was due, and that they and the other parties had treated the contract as still in force. The purchasers were given possession of the premises about the time of the purchase, and they continued in possession of the land until after the present action was brought. The testimony further tends to show that the purchasers had obtained an extension of time within which to make payment, and although that time had expired the Gabes were still endeavoring to secure the payment of the money. Under these circumstances, if a tender had been made or waived, the Gabes would be entitled to a specific performance of the contract.

The judgment that was rendered in the case is not sustained either by the pleadings or the testimony, and this objection is of itself sufficient to require a reversal and a new trial of the cause. Under its terms the purchasers are required to perform specifically, and to pay the full purchase-price of the land without obtaining the title thereto, or any credit for the value of the same. The obligations of the contract, as we have seen, were mutual, and no judgment should have been rendered requiring performance by one of the parties without also requiring it of the other. Instead of that, the judgment awards to the Gabes the full purchase-price of the land, and permits them to retain the land which represents the purchase-price. To entitle the plaintiffs below to judgment for specific performance, it devolved upon them to allege and prove a tender of performance. Unless a tender has been waived, they must allege and show the tender of a deed conveying a good title, and the tender should be kept good until the judgment is rendered. In this case there was no proof as to the ability of the Gabes

to convey the title which they had contracted to convey, nor any showing as to the condition of the title when the judgment was rendered. There being no inquiry or finding concerning the title or the ability of the Gabes to convey, this court is without power to direct any modification of the judgment respecting title. The error in the judgment is not a mere technical defect in form, but it is a substantial one in failing to protect the rights of the purchasers, and in adjudging a specific performance without providing for a conveyance ·to them of the property for which they were required to pay. The error in the final judgment is reviewable in this court, although no exception was taken to the same, nor any motion to correct the error in the trial court.

4. Erroneous judgment.

The remaining questions that have been discussed upon the admission of testimony and upon the instructions of the court have been examined, but we find nothing in them which requires special comment.

The judgment of the district court will be reversed, and the cause remanded for another trial.

All the Justices concurring.