SAMUEL BRENTNALL v. SAMUEL MARSHALL.

No. 429.*   (63 Pac. 93.)

1. PRACTICE, *District Court—Variance—Amendment.* "Where there is a variance between the allegations of a bill of particulars and the facts proved and specifically found by the jury on the trial, yet if it be a case where an amendment to a bill of particulars ought to be allowed, to conform it to the facts proved and found, the judgment in favor of the plaintiff will not be reversed on account of the variance, if no substantial rights of the defendant have been prejudiced." (*Jung v. Liebert*, 44 Kan. 304, 24 Pac. 474.)

2. REAL ESTATE—*Contract of Sale—Default.* Where, by the terms of a contract for the sale and conveyance of land, the purchase-price is made payable in instalments, and the conveyance is to be made upon the payment of the last instalment, and where default is made by the purchaser in the payment of instalments and no action is taken by the vendor, either to enforce or rescind the contract, until after the maturity of the last instalment, the obligations of the parties to the contract are mutual and dependent, and the vendor cannot put the purchaser in default save by an offer to convey the land.

Error from Osage district court; WM. THOMSON, judge.   Opinion filed December 17, 1900.   Affirmed.

*Pending in supreme court on appeal.—REP.

*A. A. Hurd, W. Littlefield,* and *O. J. Wood,* for plaintiff in error.

*C. S. Martin,* and *J. H. Stavely,* for defendant in error.

The opinion of the court was delivered by

Schoonover, J : On May 22, 1886, the Osage Carbon Company, a corporation doing business under the laws of Kansas, entered into a written contract by which it agreed to sell and convey to Samuel Marshall, the defendant in error herein, certain real estate in Osage county.   Marshall made a cash payment upon the land of $545, and agreed to pay the balance of the purchase-price, $2160, with accruing interest, in five instalments, the last instalment being due May 22, 1891.   The contract contained, among others, the following provisions :

"And it is hereby agreed and covenanted by the parties hereto, that time and punctuality are material and essential ingredients in the contract.   And in case the third party shall fail to make the payments aforesaid, and each of them, punctually, and upon the strict terms and times herein limited, and likewise to perform and complete all and each of his agreements and stipulations aforesaid strictly and literally, without any failure or default, including the prompt payment of all taxes and assessments upon said land before the same shall become delinquent according to law, then this contract, so far as it may bind said party of the first part, shall become utterly null and void, and all rights and interests hereby created or then existing in favor of the third party or derived from him shall utterly cease and determine, and the right of possession and all equitable and legal interests in the premises hereby contracted shall revert to and revest in said party of the first part, without any declaration of forfeiture or act of reentry, or any other

act of said party of the first part to be performed, and without any right of said third party to reclamation or compensation for moneys paid or services performed or improvements made, as absolutely, fully and perfectly as if this contract had never been made.

"And said party of the first part, its successors or assigns, shall have the right, immediately upon the failure of the party of the third part to comply with the stipulations of this contract, including the payment of all taxes before the same shall become delinquent, to enter upon the land aforesaid and to take immediate possession thereof, together with the improvements and appurtenances thereto belonging. And the said party of the third part covenants and agrees that he will surrender unto the said Osage Carbon Company the said lands and appurtenances, without delay or hindrance, and no court shall relieve the party of the third part from a failure to comply strictly and literally with this contract.

"In case the third party, his legal representatives or assigns, shall pay the several sums of money aforesaid punctually and at the times above limited, and shall strictly and literally perform all and singular his agreements and stipulations aforesaid after their true tenor and intent, including the prompt payment of all taxes and assessments upon the said land before the same shall become delinquent according to law, then the said trustee shall release and discharge the said land from any and all encumbrances created by the said deed of trust, and the said first party shall, upon surrender of this contract, execute and deliver to the said party of the third part, his heirs or assigns, a proper deed for the said premises, conveying the same absolutely in fee simple, with the ordinary covenants of warranty."

Marshall entered into possession of and occupied the land and made some substantial improvements upon it. In March, 1894, he leased the premises for a term of one year to Samuel Brentnall, plaintiff in error, who took possession of and occupied the same.

Marshall failed to pay all the instalments as provided by the terms of the contract, and in December, 1894, the Osage Carbon Company canceled the contract. Marshall did not consent to such cancelation otherwise than by the terms of the contract itself.

On January 18, 1895, the Osage Carbon Company executed a written lease of the premises to plaintiff in error Brentnall, who continued in possession of the land until March 1, 1896, claiming, however, to hold possession of the premises from January 18, 1895, to March 1, 1896, under and by virtue of the lease executed to him by the Osage Carbon Company.

Marshall brought suit against Brentnall before a justice of the peace of Osage county to recover $200 as rent for the premises for one year, from March 1, 1895, to March 1, 1896, and succeeded in obtaining a judgment in his favor. The case was then taken on appeal to the district court of Osage county, where a judgment was again rendered in Marshall's favor. Brentnall brings the case here for review.

Plaintiff in error contends that as this action was founded upon a written lease of the land, and the proof showed that the tenant was never put in possession of the land and never occupied it, there was, therefore, no right of recovery. Both the lease upon which the action is founded and plaintiff's petition described the land as being situated in township 17, Osage county, Kansas, while the proof showed that the land was situated in township 16, Osage county, Kansas.

We think that the record clearly shows that the case was tried upon the theory that the suit was to recover rent for the use and occupancy of land situated in township 16, Osage county, Kansas. The case was tried, in part, upon an agreed statement of

facts. It appears from this statement that Brentnall actually leased the southwest quarter of section 34, in township 16, Osage county, and that under his lease he went into possession of the land and occupied it for more than two years, but that for the last year he paid no rent to Marshall, claiming to hold the land during that year under a lease from the Osage Carbon Company. If, therefore, the Osage Carbon Company was not, and Marshall was, entitled to the possession of the land during the last year of Brentnall's tenancy, it is clear that Marshall has a cause of action against Brentnall, and, this being true, the variance between the pleading and proof was not prejudicial to Brentnall's rights.

In the case of *Jung v. Liebert*, 44 Kan. 304, 24 Pac. 474, the court held :

"Where there is a variance between the allegations of a bill of particulars and the facts proved and specifically found by the jury on the trial, yet if it be a case where an amendment to a bill of particulars ought to be allowed, to conform it to the facts proved and found, the judgment in favor of the plaintiff will not be reversed on account of the variance, if no substantial rights of the defendant have been prejudiced."

Continuing, the court says :

"Though no formal amendment was made or requested in the trial court, we think, as Mrs. Liebert was clearly entitled to her railroad fare or expense, and as the defendant was notified upon the trial of her intention to claim the same, we may properly treat the case as if an amendment to the bill of particulars, to accord with the special findings of the jury, was in fact made. Therefore, we hold that no substantial rights of the defendant have been prejudiced. An account or bill of particulars filed with a justice of the peace is not usually framed with much care or nicety, and the strict rules applicable to the

Brentnall v. Marshall.

construction of pleadings are not to control such ac-
counts or claims.  Morally and legally the plaintiff
below is entitled to the amount she recovered, and
this court ought not, on account of a mere technicality,
which does not affect the substantial rights of the
parties, to set the judgment aside."

As we have already remarked, it is clear from the
record that the case was tried upon the theory that
this was an action to recover rent for the use and oc-
cupancy of land in township 16, Osage county.  We
think, also, that the record shows that the defense re-
lied upon was that Marshall, by reason of his failure
to pay the instalments as provided by the terms of the
contract of sale entered into between himself and the
Osage Carbon Company, had forfeited his right to the
possession of the land, and that he (Brentnall) had,
therefore, a legal right to recognize the Osage Carbon
Company as his landlord.

So far as the record shows, Marshall never paid any
of the instalments named in the contract.  More than
three and one-half years elapsed from the time the last
instalment was due before the Osage Carbon Company
canceled the contract—how it was canceled the record
does not disclose.  It is not shown that any notice of
such cancelation was ever given to Marshall ; that the
company tendered to Marshall a deed to the land, with
a demand for performance on his part, or did any act
which indicated an intention to terminate the relation
existing between it and Marshall prior to the time of
the execution of the lease to Brentnall.

On the part of plaintiff in error, it is contended that
Marshall, by reason of his failure to pay the instal-
ments as provided by the terms of the contract of sale,
had forfeited, absolutely, all his interest in the land,
including the right of possession.  On the part of de-
fendant in error, it is contended that the Osage Car-

bon Company, by its delay in attempting to regain possession of the land after Marshall had made default in the payment of the instalments, waived the provisions of the contract as to time and punctuality, and that no act on its part would, therefore, be binding on Marshall, without his consent, unless the company had fully complied with the terms of the agreement and tendered to him a deed. In the case of *Soper v. Gabe*, 55 Kan. 646, 41 Pac. 969, the supreme court held that

"Where, by the terms of a contract for the sale and conveyance of land, the purchase-price is made payable in instalments, and the conveyance is to be made upon the payment of the last instalment, and where default is made by the purchasers in the payment, and no action is brought by the vendors to enforce the contract until after the maturity of the last instalment, the obligations of the parties to the contract are mutual and dependent, and the vendors cannot maintain an action to enforce the contract specifically or to recover any part of the purchase-money until they make or tender a conveyance of the land."

In this case, the terms of the contract providing for a forfeiture in case of failure to make prompt payment of instalments when due, as well as the agreement to make conveyance of the land upon payment of all instalments, etc., was, in effect, identical with the provisions of the contract in the case at bar. In its opinion, the court said:

"The obligations of the contract are mutual and dependent, and before one party can enforce performance it must appear that he is not himself in default. The Gabes might have enforced the collection of all the instalments preceding the last one without having tendered a conveyance of the property sold, but as no steps were taken to collect the several instalments until after the last one was due, a single cause of ac-

tion exists for the collection of the purchase-money, and payment cannot be compelled until they have complied or tendered compliance with the obligations resting upon them."

The court cited the opinion in *Iles v. Elledge*, 18 Kan. 296, a somewhat similar case, wherein it was held that

"All parties to the papers must perform at the same time, neither being under any obligations to trust the other. As it appears that Elledge has neither delivered nor tendered a deed, he cannot maintain an action for the purchase-money embraced in the note sued on."

Applying the rule stated in these cases to the facts in the case at bar, we hold that before the Osage Carbon Company could place Marshall in default it must have tendered to him a deed to the land.

It is true that, upon the failure of Marshall to pay any of the instalments preceding the last, it might have canceled the contract and recovered possession of the land without any offer on its part to perform, and, as Marshall's right of possession would have been terminated absolutely, it is possible that Brentnall might legally have recognized the Osage Carbon Company as his landlord. But as the company delayed action until long after the last instalment became due, it was then as much its duty to tender a deed as it was Marshall's duty to tender payment; for, as was said in the case of *Soper v. Gabe*, supra, after the last payment became due, the terms of the contract were mutual and dependent. If, then, the Osage Carbon Company could not put Marshall in default save by an offer to perform, it follows that the right of possession was in Marshall during the year that Brentnall claimed to hold the land under a lease from the Osage

Carbon Company and Marshall was entitled to rent for that time. Under the circumstances, the well-settled principle that the tenant cannot dispute his landlord's title would apply.

No error appearing in the record, the judgment of the district court will be affirmed.